**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**KEVIN SCOTT NUTTER,**

Plaintiff,

**v.**

**CIVIL ACTION NO.: 1:19-CV-70
(KLEEH)**

**ANDREW M. SAUL,
Commissioner of Social Security,**

Defendant.

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

This case arises from the denial of Plaintiff Kevin Scott Nutter's ("Plaintiff") Title II application for a period of disability and disability insurance benefits ("DIB"). After Plaintiff's application proceeded through the administrative process, a United States Administrative Law Judge ("ALJ"), Nikki Hall, concluded that Plaintiff was not disabled within the meaning of the Social Security Act. Plaintiff's request for review by the Appeals Counsel was denied, making the ALJ's decision the final decision of Defendant Andrew M. Saul ("Commissioner"), the Commissioner of Social Security. Now, Plaintiff seeks judicial review of the Commissioner's decision. Because the Commissioner's final decision to deny Plaintiff's claim for DIB contains no legal error and is supported by substantial evidence, the undersigned reports and recommends that Plaintiff's Motion for Summary Judgment [ECF No. 12] be **DENIED** and Defendant's Motion for Summary Judgment [ECF No. 15] be **GRANTED**.

## II. __PROCEDURAL HISTORY__

On September 10, 2015, Plaintiff applied for disability insurance benefits under Title II of the Social Security Act, with an alleged onset date of disability of February 6, 2015. R. 16. The Plaintiff's claim was denied initially and upon reconsideration. R. 16. After this denial, Plaintiff filed a request for a hearing on May 6, 2016. R. 16. On January 30, 2018, a hearing was held in Morgantown, West Virginia, and Plaintiff, represented by Travis Miller, Esq., appeared before the Administrative Law Judge, Nikki Hall. R. 16. Casey Vass, a vocational expert, appeared telephonically at the hearing. R. 16, 38.

On May 2, 2018, the ALJ issued a decision concluding that Plaintiff was not disabled within the meaning of the Social Security Act at any time since February 6, 2015, through the date of this decision. R. 30. On February 4, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. R. 1-4.

On April 1, 2019, Plaintiff, through counsel, Michael Miskowiec, Esq., filed a Complaint in this Court to obtain judicial review of the Commissioner's final decision pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). Compl., ECF No. 1. The Commissioner, through counsel Helen Campbell Altmeyer, Assistant United States Attorney, filed her Answer and the Administrative Record on June 12, 2019. Answer, ECF No. 5; Admin. R., ECF No. 6. Soon thereafter, Plaintiff and the Commissioner filed their Motions for Summary Judgment and supporting briefs. Pl.'s Mot. Summ. J., ECF No. 12; Def.'s Mot. Summ. J., ECF No. 15. Plaintiff filed a reply to the Commissioner's Motion for Summary Judgment. ECF No. 17. Oral argument on the parties' motions was held before the undersigned on September 25, 2019.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule of Civil Procedure 9.02(a). Having reviewed the parties' motions and the administrative record, the undersigned now issues the following Report and Recommendation.

## III.   __BACKGROUND__

### A.   Personal History

Plaintiff was born on November 10, 1959, and he was fifty-six years old at the time he made his application for DIB. R. 78. He is 6'03" and weighs approximately 240 pounds. R. 185. Plaintiff is married, and he lives with his wife in a single-story house with a basement. R. 48. Plaintiff graduated high school in 1978. R. 186. Plaintiff claims he last worked February 6, 2015. R. 52. Plaintiff alleges that he is disabled due to the following illnesses, injuries, or conditions: "problems with both knees – left knee replaced, right hip replaced, right shoulder problems, disks removed in lower back, titanium plate in neck, ocular myasthenia gravis, peripheral neuropathy, and mitral valve prolapse." R. 78, 185.

### B.   Medical History

In accordance with this Court's Order Directing Filing of Briefs, the parties were required to produce a stipulation of facts in order to provide the Court with a chronology in narrative form of Plaintiff's relevant medical history. Order, ECF No. 8, at 2. Accordingly, the undersigned relies upon those stipulated facts throughout this report and recommendation. See Pl.'s Mem. Supp. Mot. Summ. J., ECF No. 13 at 4-8; Def.'s Brief Supp. Mot. Summ. J., ECF No. 16 at 4-8.

## IV.   THE FIVE-STEP EVALUATION PROCESS

To be disabled under the Social Security Act, a claimant must meet the following criteria:

> [The] individual . . . [must have a] physical or mental impairment or impairments . . . of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . . '[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Social Security Administration uses the following five-step sequential evaluation process to determine whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement [of twelve months] . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a), 416.920(a). "If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional

capacity [("RFC")] based on all the relevant medical and other evidence in your case record, as explained in § 404.1545." 20 C.F.R. §§ 404.1520(e), 416.920(e).

> (iv) At the fourth step, we consider our assessment of your [RFC] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920. In steps one through four, the burden is on the claimant to prove that he or she is disabled and that, as a result of the disability, he or she is unable to engage in any gainful employment. Richardson v. Califano, 574 F.2d 802, 804 (4th Cir. 1978). Once the claimant so proves, the burden of proof shifts to the Commissioner at step five to demonstrate that jobs exist in the national economy that the claimant is capable of performing. Hicks v. Gardner, 393 F.2d 299, 301 (4th Cir. 1968). If the claimant is determined to be disabled or not disabled during any of the five steps, the process will not proceed to the next step. 20 C.F.R. §§ 404.1520, 416.920.

## V.  ADMINISTRATIVE LAW JUDGE'S DECISION

At step one of the sequential evaluation process outlined above, the ALJ concluded that Plaintiff had not engaged in any substantial gainful activity since October 6, 2015, the alleged onset date of Plaintiff's disability. R. 19. At step two, the ALJ found that Plaintiff suffers from the following severe impairments: status post total arthroplasty of the left knee; right hip total replacement; degenerative disc disease of the lumbar spine; degenerative disc disease of the cervical spine; status post fusion at C6-7; early degenerative disc disease with disc bulge at T4-5, with dropped head syndrome; chronic

pain and myalgias; osteoarthritis of the right knee; and generalized polyneuropathy. Id.

At step three, the ALJ found that Plaintiff does not have an impairment, or combination of

impairments, that meets or medically equals the severity of one of the listed impairments.

R. 21. At step four, the ALJ determined that Plaintiff has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) except that work should not require greater than four hours of standing and/or walking in an eight hour workday, with the following non-exertional limitations; all postural movements are limited to occasionally, except never climb ladders, ropes, and scaffolds, kneel, or crawl as requirements of the job; work should not require exposure to concentrated levels of vibrations, or exposure to unprotected heights or dangerous unshielded moving mechanical parts; work should not require greater than occasional exposure to concentrated levels of extreme temperatures; and work should not require constant overhead reaching with the left arm/shoulder or constant fine manipulation with the left hand.

R. 22. Based on this RFC, the ALJ determined that Plaintiff "is capable of performing past

relevant work as a Dispatcher." R. 30. Thus, the ALJ found that Plaintiff is not disabled

within the meaning of the Social Security Act. R. 30.

## VI.   DISCUSSION

### A. Scope of Review

In reviewing an administrative finding of no disability, the scope of review is limited

to determining whether the ALJ applied the proper legal standards, and whether the ALJ's

factual findings are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453,

1456 (4th Cir. 1990). "A factual finding by the ALJ is not binding if it was reached by

means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d

514, 517 (4th Cir. 1987). Likewise, a factual finding by the ALJ is not binding if it is not

supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971).

Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the United States Court of Appeals for the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). When determining whether substantial evidence exists, a court must "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ['s]." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005).

## B. Contentions of the Parties

In Plaintiff's Motion for Summary Judgment, Plaintiff argues that the ALJ's findings concerning Plaintiff's residual functional capacity and the capacity necessary to perform his past relevant work are unsupported by substantial evidence. ECF No. 13, at 1-2. First, Plaintiff contends that the ALJ failed to include one of Plaintiff's impairments, posterior interosseous nerve syndrome, in her decision. Id. Second, Plaintiff contends that the ALJ failed to explain her reasoning for giving Dr. Lateef's medical opinion partial weight. Id. at 11. Third, Plaintiff contends that the ALJ failed to include any symptoms of Plaintiff's dropped head syndrome in her decision. Id. at 13. Fourth, Plaintiff contends that the ALJ relied on evidence that was not in the administrative record to resolve the conflict between the VE and the DOT. Id. Based on these alleged errors, Plaintiff requests that the Court

vacate the Commissioner's decision and remand this matter for proper findings of fact. Id. at 15.

Conversely, the Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed as a matter of law. ECF No. 15, at 1. Addressing Plaintiff's argument for summary judgment, the Commissioner avers that the Plaintiff failed to meet his burden of proving that his physical limitations prevented him from performing all work in the national economy, and ALJ fully accounted for Plaintiff's functional limitations. ECF No. 16, at 1. Accordingly, the Commissioner requests that the Court affirm its final decision. Id. at 15.

In Plaintiff's Reply Brief, Plaintiff reiterates his aforementioned arguments. ECF No. 17 at 1-2.

### C. Substantial Evidence Supports the ALJ's Decision

For the following reasons, the undersigned concludes that the ALJ's findings concerning Plaintiff's residual functional capacity and his capacity to perform his past relevant work are supported by substantial evidence.

### 1. Omitting Plaintiff's posterior interosseous nerve syndrome at step two of the disability evaluation is not a reversible error.

In Plaintiff's Brief in Support for Motion for Summary Judgment, he argues "the ALJ did not include one of Plaintiff's impairments, posterior interosseous nerve syndrome which left [Plaintiff's] left hand atrophied and drawn in like a claw, in her decision as either a severe or non-severe impairment." ECF No. 13 at 1, 10. At oral argument, Plaintiff focused on two issues: (1) the report from Dr. Parlsey, where Dr. Parlsey indicated that

Plaintiff's left hand was atrophied, and (2) the ALJ's decision, where the ALJ incorrectly stated that "there was no evidence of atrophy." R. 422, 27.

In Defendant's Brief in Support of Her Motion for Judgment of the Pleadings, Defendant responded that "the ALJ considered Plaintiff's left-hand impairment and fully accounted for any functional limitations by restricting Plaintiff to no constant fine manipulation with the left hand." ECF. No. 16 at 11. During oral argument, Defendant reiterated that the ALJ sufficiently considered Plaintiff's left-hand impairment.

At step two of the disability evaluation, the ALJ must consider the Plaintiff's medically determinable impairments. 20 C.F.R. § § 404.1521, 416.921. The Supreme Court has held that step two of the disability evaluation is a de minimis threshold. Woodson v. Berryhill, No. 3:17-CV-347 (REP), 2018 U.S. Dist. LEXIS 167396, *at 10 (E.D. Va. Aug. 7, 2018); Williams v. Astrue, No. 2:09cv60, 2009 U.S. Dist. LEXIS 124572, at *14 (E.D. Va. Feb. 2, 2010) (citing Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987)). The ALJ satisfies step two by finding a severe impairment and proceeding to the remainder of the disability evaluation. McCormick v. Soc. Sec. Admin. Comm'r., 619 Fed. Appx. 855, 858 (11th Cir. 2015). Here, the ALJ satisfies step two because she found that Plaintiff suffered from multiple severe impairments, and then proceeded to the next step in the disability evaluation. R. 19-21.

"An ALJ's incorrect characterization of a severe impairment as "non-severe" or [an ALJ's] failure to address a medically determinable impairment at step two does not automatically require [reversal.]" Woodson, 2018 U.S. Dist. LEXIS 167396 at *11. Rather, courts will find no reversible error or treat the error as harmless provided that the ALJ

considered all of Plaintiff's impairments in the disability evaluation. <u>Woodson</u>, 2018 U.S. Dist. LEXIS 167396 at *11.

"While the Fourth Circuit has not addressed the precise issue, district courts in this Circuit have adopted the view that an ALJ does not commit reversible error by omitting an impairment at step two, so long as the ALJ considers the impairment in subsequent steps." <u>Woodson</u>, 2018 U.S. Dist. LEXIS 167396 at *12-13.

Although, the ALJ omitted discussion of Plaintiff's posterior interosseous nerve syndrome at step two, she considered the impairment when fashioning the residual functional capacity assessment and when determining whether Plaintiff can perform his past relevant work. R. 22-30. First, the ALJ considered Plaintiff's testimony relating to his issues with his left hand and recited in her decision,

> "He testified to significant grip issues bilaterally and stated that he is supposed to wear a glove on his left hand when the temperature is less than 40 degrees, because he could get frostbite. He stated that he is unable to tell whether his fingers are hot or cold. He testified that while he underwent carpal tunnel syndrome bilateral and elbow surgery, he never regained feeling in the left hand. He testified that he is unable to use his left hand for keyboarding or to manipulate a mouse."

R. at 23. She further acknowledged, "[t]he [Plaintiff] alleged debilitating pain and functional difficulties . . . using [his] hands." R. at 23.

Second, the ALJ considered Plaintiff's testimony and reported activities. R. at 24.

> "Plaintiff testified that he drives during the day. He also testified that he has a computer that he uses to access the internet and that he looks up information/data on his computer, despite his . . . difficulties using his hands to use a computer."

R. at 24. The ALJ further noted, "the [Plaintiff's] Function Report indicates . . . he fed pets, cooked meals on a daily basis, and performed light household chores." R. at 24.

Third, the ALJ considered Plaintiff attorney's argument "that [Plaintiff] should be limited to no more than occasional use of his left hand for fine manipulation, based upon the consultative evaluation at Exhibit 10F." R. 24. Specifically, "the consultative evaluation report notes that [Plaintiff] could not write or pick up a coin with the left hand, [but] that the range of motion of the joints of the fingers of both hands was within normal limits." R. 24.

Fourth, the ALJ considered the medical evidence relating to Plaintiff's trip to the emergency department in September 2017 when he lacerated his left index finger while using a table saw. R. 24-25. Based on that evidence, the ALJ included the following finding:

> "[Plaintiff had] full range of motion of the left index finger, despite chronic inability to fully extend at the proximal interphalangeal joint due to nerve damage from a decompression many years ago. Although he was noted to have chronic numbness in that finger, the exam demonstrated normal flexion at the metacarpophalangeal and proximal interphalangeal joints, except for being unable to fully extend at the proximal interphalangeal joint in the left index finger. This evidence supports the ability[y for Plaintiff to use] his hands. However, being that [Plaintiff] does have issues with grip strength and fully extending the left index finger, the [ALJ] has more than fully accommodated these issues by reducing [Plaintiff] to the sedentary exertional level, with a limitation on fine manipulation . . ."

R. at 25.

Fifth, the ALJ reviewed the requirements of Plaintiff's past relevant work to determine whether the evidence supports a disabling level of severity with respect to Plaintiff's issue with his left hand, and ultimately found that "the evidence does not support

a disabling level of severity with respect to the [Plaintiff's] issues with his left hand." R. 25. She concluded that "in comparing [Plaintiff's] residual functional capacity with the physical and mental demands of this work, the [ALJ] finds that [Plaintiff] is able to perform the job of Dispatcher as actually and generally performed." R. 30.

Sixth, the ALJ considered the medical evidence from Dr. Parsley following the evaluation of Plaintiff's left extremity strength at the request of the State Agency. R. 27. Dr. Parsley noted that Plaintiff's "left extremities muscle strength was graded 3/5, muscle strength of the right extremities was graded normally at 5/5." R. at 27. As Plaintiff pointed out in its Brief and during oral argument, the ALJ, in her decision, incorrectly stated, "there was no evidence of atrophy," specifically referring to the left hand. R. at 27 and ECF No. 16 at 6. To clarify, Dr. Parsley did include in her report that "there is atrophy of the left hand [but] there is no atrophy of the right hand." R. at 422. However, even with the ALJ's incorrect reading of Dr. Parsley's report, Plaintiff's left extremity strength issues were fully accounted for when determining his residual functional capacity.

Seventh, the ALJ considered Dr. Sedney's motor exam of the left extremity, which "revealed 4/5 left upper extremity [motor strength]," and Dr. Hatfield's muscle tone and strength of the upper left extremity, where she "found that muscle tone was normal and 5/5 strength throughout, except for some left upper extremity weakness. R. at 27. Finally, the ALJ considered Dr. Mandy's diagnoses of "left arm numbness and left-hand weakness." R. 27.

After a careful review of the ALJ's decision, the undersigned concludes that the ALJ sufficiently considered Plaintiff's condition throughout her decision, fittingly accommodated Plaintiff in the residual functional capacity, and did not commit a

reversible error at step two by not identifying Plaintiff's posterior interosseous nerve syndrome as either severe or non-severe.

## 2. The ALJ sufficiently explained and weighed Dr. Lateef's assessment when fashioning Plaintiff's residual functional capacity.

Plaintiff contends that the ALJ improperly explained and weighed the findings of Dr. Lateef, the state agency physician. ECF No. 13 at 10. 10. Specifically, Plaintiff argues that the ALJ did not provide a proper explanation for why Dr. Lateef's opinion was given partial weight. ECF No. 13 at 11. In response, Defendant argues that substantial evidence supports the ALJ's decision to give the opinion partial weight. ECF No. 16 at 12.

To begin, "questions over the weight to be assigned to medical opinions speak to the ultimate determination of Plaintiff's residual functional capacity." Bonvillain v. Berryhill, No. 1:18-cv-978 (TCB), 2019 U.S. Dist. LEXIS 43004, at *7, (E.D. Va. Mar. 15, 2019). After step three of the disability evaluation, but before deciding whether Plaintiff can perform past relevant work at step four, the ALJ must determine the Plaintiff's residual functional capacity. Id. The ALJ must consider opinions by medical professionals in order to determine a Plaintiff's residual functional capacity. Id. at 7-8.

An ALJ must "weigh and evaluate every medical opinion in the record." Monroe v. Comm'r of Soc. Sec., No. 1:14CV48, 2015 WL 4477712, at *7 (N. D. W. Va. July 22, 2015) (emphasis added); see 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). When evaluating medical opinions, the ALJ must "go through the exercise of carefully balancing the evidence, assigning weights to the competing opinions . . . and explaining the rationale for doing so." Smith v. Barnhart, 395 F. Supp. 2d 298, 307 (E.D.N.C. 2005). That careful balancing necessarily requires that the ALJ explain why the "medical evidence in the record supports the opinions or

how the opinions are consistent with the medical evidence." <u>Buchanan v. Colvin</u>, No. 1:14cv209, 2016 WL 485339, at *4 (W.D.N.C. Jan. 19, 2016). Furthermore, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

In addition, generally, opinions from treating sources are given more weight than other opinions, and the ALJ should give more weight to the opinion of an examining source than to the opinion of a non-examining source. <u>Id.</u>; <u>Graham v. Berryhill</u>, No. 7:18-CV-22-FL, U.S. Dist. LEXIS 44761, at * 10, (E.D. N.C. Jan. 10, 2019).  However, if an opinion is not given controlling weight, the Social Security regulations require that the following factors be considered to determine the weight given to the medical opinion: (1) examining relationship, (2) treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) any other factors that tend to support or contradict the medical opinion. <u>Bonvillain</u>, 2019 U.S. Dist. LEXIS 43004 at *9.  Moreover, an ALJ is not required to explicitly analyze each factor provided that the ALJ is clear as to which factors justify her conclusion. <u>Id</u>. Under the substantial evidence standard, "[a]n ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies' or has failed to give a sufficient reason for the weight afforded a particular opinion." <u>Dunn v. Colvin</u>, 607 F. App'x. 264, 267 (4th Cir. 2015) (citations omitted) (quoting <u>Scivally v. Sullivan</u>, 966 F.2d 1070, 1077 (7th Cir. 1992)).

In this case, the ALJ reviewed Dr. Lateef's medical assessment (Exhibit 3A/9-11), which included Dr. Lateef's findings relating to Plaintiff's left-hand issues. R. 29. Ultimately, the ALJ gave partial weight to the assessment of Dr. Lateef. R. at 29. To

determine the appropriate weight to give to Dr. Lateef's opinion, the ALJ observed that Dr. Lateef was not Plaintiff's treating physician but "a non-examining State Agency physician." R. at 29. While the ALJ found that Dr. Lateef's assessment was more consistent with the hearing level evidence than the assessment of Dr. Franyutti, another non-examining State Agency physician, neither Dr. Franyutti nor Dr. Lateef had the opportunity to review the entire record that was presented at the hearing level. R. 29. Furthermore, the ALJ discussed additional evidence, such as previously referenced medical opinions and Plaintiff's Function Report, throughout her decision that was inconsistent with Dr. Lateef's opinion of Plaintiff's manipulative limitations. See R. 24-25, 27, 29.

Further, Plaintiff takes issue with the ALJ's residual functional capacity, which provides for no "constant fine manipulation with the left hand." ECF No. R. at 22. Plaintiff argues that the "ALJ did not give any reason or explanation for her implicit rejection of Dr. Lateef's opinion," regarding the finding that that Plaintiff should avoid constant and frequent fine manipulation with the left hand. ECF No. 13 at 11; R. 98.

To clarify, the residual functional capacity specifically limits Plaintiff to "no constant fine manipulation with the left hand." R. at 22. "Constant" is defined as occurring two-thirds or more of time, and under the regulations, while "frequent" means "occurring from one-third to two-thirds of the time." Haro v. Colvin, No. CV 13-09319-JEM, 2014 WL 4929032, at *16 (C.D. Cal. 2014); SSR 83-10, 1983 SSR LEXIS 30, at *14 (1983). Based on the above-mentioned definitions, the ALJ limited Plaintiff to fine manipulation occurring less than two-thirds of the time. Ultimately, the ALJ used Dr. Lateef's assessment when

fashioning Plaintiff's residual functional capacity when limiting Plaintiff to "no constant fine manipulation."

Based on the inconsistencies addressed above relating to Plaintiff's left-hand issues, the ALJ provided sufficient reasons for ascribing Plaintiff's residual functional capacity. And ultimately, any questions over the weight to be assigned to Dr. Lateef's medical opinions speak to the ultimate determination of Plaintiff's residual functional capacity, which fully accommodated Plaintiff. Therefore, the undersigned concludes that there is no reason to disturb the ALJ's determination as to the partial weight assignment.

### 3. The ALJ considered symptoms of Plaintiff's dropped head syndrome in her decision.

In Plaintiff's Brief in Support of Motion for Summary Judgment [ECF No. 13 at 13], Plaintiff alleges that the ALJ "did not include any symptoms of [Plaintiff's] dropped head syndrome although she included it in his severe impairments." Further, Plaintiff suggests that the ALJ failed to consider "whether an individual who experienced pain every time he raised his head to look forward would be able to do so for an eight-hour workday." Id. Defendant asserts that the ALJ did consider the symptoms associated with Plaintiff's early degenerative disc disease with disc bulge at T4-5, with dropped head syndrome because she accommodated Plaintiff's symptoms when fashioning his residual functional capacity. ECF No. 16 at 14.

When considering the claimant's symptoms, the ALJ must follow a two-step process:

> "First, the ALJ determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms, including pain. Second, the ALJ evaluates the intensity and persistence of the claimant's symptoms (such as pain) and determines the extent to which the symptoms limit the claimant's ability to perform work-related activities."

Brumfield v. Berryhill, No. 318CV430, 2018 U.S. Dist. LEXIS 192276, at *15 (S.D. W. Va. Oct. 19, 2018).

The ALJ must evaluate the intensity and persistence of the claimant's symptoms by considering the entire record, including the objective medical evidence, the claimant's statements, statements and other information provided by medical sources and other persons, and any other relevant evidence from the record. Id.

Following the first step of the two-step process, the ALJ found that Plaintiff had a severe impairment of "early degenerative disc disease with disc bulge at T4-5, *with* dropped head syndrome." R. 19. Further, the ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms. R. 23. Overall, the symptoms associated with Plaintiff's dropped head syndrome were considered in conjunction with his early degenerative disc disease with disc bulge at T4-5.

At the second step, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 23. Specifically, the ALJ carefully reviewed Plaintiff's statements concerning his symptoms associated with his dropped head syndrome and compared it with evidence of Plaintiff's daily activities and the medical evidence.

To begin, at the hearing, the ALJ asked Plaintiff questions relating to his neck issues and his symptoms associated with his neck pain. R. at 60 The ALJ asked Plaintiff, "How's your neck doing?" Id. Plaintiff answered, "I'm supposed to go back the 27th of February, and see a neurosurgeon due to the discs in my neck, and the arthritis. The bulged discs."

Id. Then, the ALJ asked, "What kind of symptoms are you having?" Plaintiff replied, "Numbness, catching in my neck so when I turn my head it cracks real loud. Numbness down my arms, and it just feels like a burning sensation . . ." Id. Further, the ALJ included in her report that the Plaintiff testified to his debilitating neck pain. R. at 23. The ALJ considered statements from Plaintiff's attorney where he indicated that Plaintiff has significant degenerative disc disease of his lumbar, thoracic, and cervical spine. R. at 22, 40. However, the ALJ found that Plaintiff's testimony was inconsistent with a totally disabling condition when comparing it to Plaintiff's reported activities. R. at 24. Plaintiff's Function Report indicated that Plaintiff can feed his pets, cook meals daily, and perform light household chores, despite needing frequent breaks. R. 24. Further, Plaintiff can perform personal care, drive a car, and shop in stores. R. 24. The ALJ found this evidence to support physical abilities to perform work related activities. R. 24.

When fashioning Plaintiff's residual functional capacity, the ALJ considered medical evidence from Dr. Mandy's diagnosis regarding Plaintiff's neck pain, Dr. Courtney's diagnosis of Plaintiff's degenerative disc disease, and Dr. Rizk's diagnosis of back pain. R. 27-28. Ultimately, the ALJ limited Plaintiff to perform only sedentary work and limited Plaintiff's exposure to vibrations and hazards to accommodate his back and neck issues. R. 22, 29.

In sum, the ALJ found that the statements concerning intensity, persistence, and limiting effects of his symptoms reveal some inconsistencies in looking at the evidence as a whole, which detract from a totally disabling condition. R. 23. In doing so, the ALJ considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence. R. 22.

Therefore, the undersigned concludes that that ALJ included Plaintiff's symptoms relating to his severe impairment of early degenerative disc disease with disc bulge at T4-5, *with* dropped head syndrome when fashioning Plaintiff's residual functional capacity.

### 4. The ALJ identified, resolved, and explained the resolution of the conflict between the vocational expert's testimony and the DOT.

Plaintiff alleges that the ALJ failed to resolve the conflict between the VE's testimony and the DOT. ECF No. 13 at 14. More specifically, Plaintiff argues, "the [ALJ] did not choose between the vocational expert and the DOT but instead did her own vocational research and relied on a document, which is not in the administrative record." ECF No. 13 at 14-15.  Plaintiff takes issue with the ALJ's use of Occubrowse "to support her conclusion that the job of gas dispatcher did not require constant fine manipulation." ECF No. 13 at 15. Plainly, Plaintiff disagrees with the ALJ's resolution of the conflict between the VE and the DOT.

### a.  Legal Standard

An ALJ "may not rely on evidence provided by a VE, . . . if that evidence is based on underlying assumptions or definitions that are inconsistent with [the] regulatory policies or definitions." SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000). The purpose of SSR 00-4p is to require the ALJ (not the VE) to "'[i]dentify *and* obtain a reasonable explanation' for conflicts between the vocational expert's testimony and the [DOT]*, and* to '[e]xplain in the determination or decision how any conflict that has been identified was resolved.'" Pearson v. Colvin, 810 F.3d 204, 208 (4th Cir. 2015) (quoting SSR 00-4p, 2000 WL 1898704, at *1)). These are three distinct duties on the ALJ.

First, "[t]he ALJ must independently **identify** conflicts between the [VE]'s testimony and the [DOT]." Id. at 209 (emphasis added). This means that "SSR 00-4p . . . requires

nothing of the claimant." Id. at 210. The ALJ must identify "apparent conflicts" between the VE's testimony and the DOT. See id. at 209. An "apparent conflict" exists where the VE's testimony seems to conflict with the DOT, even if it does not actually conflict with the DOT. See id. However, mere "nitpicking" the ALJ's or VE's word choice on appeal is not an "apparent conflict." Id. An ALJ does not fulfill "his affirmative duty to identify conflicts 'merely because the [VE] responds "yes" when asked if her testimony is consistent with the [DOT].'" Id. at 208–09 (quoting Moore v. Colvin, 769 F.3d 987, 990 (8th Cir. 2014)).

Second, the ALJ is required to **resolve** those identified conflicts between the VE's testimony and the DOT. The ALJ resolves a conflict by "obtain[ing] a reasonable explanation [from the VE] for the . . . conflict." Id. at 208. The ALJ "can request an explanation of the conflict by submitting interrogatories to the vocational expert. . . If the expert provides a sufficient explanation, the ALJ can resolve the apparent conflict on the basis of the answer to the interrogatories." Id. at 210 n.4. The reality is that "in many cases, testimony may only appear to conflict with the [DOT], and the [VE] may be able to explain that, in fact, no conflict exists." Id. at 209. "However, if the ALJ does not elicit this explanation, then the expert's testimony cannot provide substantial evidence to support the ALJ's decision." Id. at 209–10.

Finally, the ALJ must "**explain** in the determination or decision how any conflict that has been identified was resolved." Id. at 208; see also Keller v. Berryhill, 754 F. App'x 193, 196 (4th Cir. 2018) ("Ruling 00-4p further requires that the ALJ explain her resolution of an apparent conflict before relying on the VE's testimony to support the denial of a benefits claim."); Springer v. Berryhill, No. 1:16-CV-150, 2017 WL 3447920, at *14 (N. D. W. Va. July 25, 2017), adopted by 2017 WL 3446628 (discussing "whether the ALJ met

her duty under SSR 00-4p to explain how any conflicts were resolved"). The ALJ needs to do more than just elicit an explanation for the conflict from the VE; the ALJ must also "determine that the explanation is reasonable and provides a basis for relying on the testimony rather than the [DOT]." Pearson, 810 F.3d at 210. Faced with conflicts between the VE's testimony and the DOT, an ALJ's one-sentence, unexplained decision that "accept[s] the vocational expert's testimony as consistent with the [DOT]" is not enough to satisfy the ALJ's duty. See Springer, 2017 WL 3447920, at *14. A reviewing court cannot determine if an ALJ's reasons for resolving a conflict in the way that he did are supported by substantial evidence if the ALJ provides no such reasons. See Id.

### b. Gas Dispatcher

To begin, according to the DOT, the job of a Gas Dispatcher requires occasional fingering. See DICOT 953.167-010, 1991 WL 688360. However, the VE testified that he disagrees with the DOT and believes the level of fingering needed to perform the job would be frequent. R. 72. Specifically, the VE testified, "By the DOT, [Plaintiff's] fingering will be occasionally. I would have to probably disagree with the occasional. I think it's frequent …" R. at 72. The undersigned concludes there is an apparent conflict between the VE's testimony and the DOT.

In order to resolve the conflict, the ALJ submitted hypotheticals to the VE to elicit an explanation for the conflict. Specifically, the ALJ submitted the following:

> ALJ: So, the hypothetical was that work *should not require* constant, overhead reaching with the left arm and shoulder, or *constant fine manipulation with the left hand*. In addition to the other –"
>
> VE: Oh, I'm sorry, Judge. Let me research it. *Then they can do the past work of a dispatcher*.

> ALJ:  And if I were to change it to say occasional fine manipulation with the left hand, and that's changing the prior hypothetical, now what would your response be?
>
> VE:  My response would be by the DOT with the occasional could do it. As I've observed it could not. I think it would be frequent.

R. 72-73. The conflict is resolved during the hearing because the VE testified that according to the hypotheticals posed by the ALJ, the hypothetical person with the same age, education, and work background as the Plaintiff could work as a dispatcher if the work did not require constant fine manipulation with the left hand. R. 72-73. Even though the VE did not believe the hypothetical person could perform the job as a dispatcher as the VE had previously observed in 2001 in Louisiana, the VE testified that if the left hand manipulation was limited to not require constant fine manipulation, then the hypothetical person could perform the past work as a dispatcher. Ultimately, this language "no constant fine manipulation with the left hand" was included in Plaintiff's residual functional capacity. R. 22. The undersigned concludes this explanation was sufficient to resolve the conflict.

However, Plaintiff alleges that the ALJ relied on evidence that was not in the administrative record to resolve the conflict. Specifically, Plaintiff contends that the ALJ committed a legal error by citing "to a source in her decision described as Occubrowse to support her conclusion that the job of Gas Dispatcher did not require constant fine manipulation." ECF No. 13 at 15. Plaintiff cites to Perine v. Astrue, 143 Soc. Sec. Rep. Serv. 605 (N.D.W.Va. July 9, 2009), to support his allegation.

In Perine, the ALJ relied on evidence outside the record to discredit the opinion of the treating physician. The ALJ relied on a newspaper article about federal criminal charges pending against the physician as a basis for discounting the physician's medical opinion.

The Court found that the ALJ's decision to reject the opinion of the physician based upon the newspaper article was not supported by substantial evidence.

However, the circumstances in <u>Perine</u> are not analogous to this case because the ALJ used reliable job information from Occubrowse, which is consistent with the occupational evidence supplied by the DOT. The ALJ may take official notice of the DOT and administrative notice of reliable job information available from various governmental sources and other publications. <u>Harvey v. Heckler</u>, 814 F.2d 162, 164 n.1 (4th Cir. 1987); 20 C.F.R. 404.1566(d). SkillTran, LLC has a contract with the Social Security Administration to provide the administration with an Occubrowse subscription.[1] This allows the ALJ to take administrative notice of the job information provided on Occubrowse through the Social Security Administration.

Further, the information the ALJ used in Occubrowse is identical to the information in the DOT. The ALJ explained that Occubrowse showed the Gas Dispatcher job to require occasional fingering, which is identical to the description found in the DOT as identified by the vocational expert. R. at 25, 72. *See* DICOT 953.167-010, 1991 WL 688360. There is no evidence that the ALJ relied on Occubrowse over the DOT because the occupational information supplied by Occubrowse is consistent with the occupational evidence supplied by the DOT. Therefore, the undersigned concludes that the ALJ further clarified the resolution of the conflict in the ALJ's decision.

Finally, the ALJ explained in the record the reason for the ALJ's determination. The ALJ stated, "Pursuant to SSR 00-04p and *Pearson v. Colvin* (No. 14-2255), the [ALJ] has determined that the vocational expert's testimony is consistent with the information

---

[1] <u>Office of Acquisition and Grants</u>, Social Security (October 9, 2019, 9:48 AM), https://www.ssa.gov/oag/foia/contract/ssa.hq.awards.3.html

contained in the Dictionary of Occupational Titles, except for any possible variances not addressed in the DOT. In this respect, the [ALJ] has determined that the vocational expert's testimony is based upon his professional experience." R. 30. This is not the same issue as in Springer because the ALJ provided more than boilerplate language and gave a sufficient explanation for its determination. Reading the ALJ's decision on its own, there is evidence to indicate that the ALJ identified a conflict, resolved it, and explained her reasoning for resolving it. Therefore, the undersigned concludes the ALJ did not err.

## VII.   RECOMMENDATION

For the reasons herein stated, I find that the Commissioner's decision denying Plaintiff's claim for DIB is supported by substantial evidence. Accordingly, I **RECOMMEND** that Plaintiff's Motion for Summary Judgment [ECF No.12] be **DENIED**, Defendant's Motion for Summary Judgment [ECF No. 15] be **GRANTED**, the decision of the Commissioner be **AFFIRMED**, and this case be **DISMISSED WITH PREJUDICE**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objections are made and the basis for such objections. A copy of such objections should also be submitted to the Honorable Thomas S. Kleeh, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. See 28 U.S.C. § 636(b)(1); Wright v. Collins, 766 F.2d 841, 845-48 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Respectfully submitted this 21st day of October, 2019.


ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE